**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 20-cv-03501-RBJ

LIBERTY GLOBAL, INC.,

Plaintiff,

v.

UNITED STATES OF AMERICA,

Defendant.

---

MOTION FOR SUMMARY JUDGMENT

---

## I. INTRODUCTION

This motion addresses the DOJ's attempt to disregard the Entity Conversion (defined below) under the economic substance doctrine ("ESD") and the step transaction doctrine. For the reasons set forth below, the DOJ's position must be rejected.

The step of Project Soy that the DOJ attempts to disregard is the conversion of Telenet Group, a subsidiary of Telenet Group Holdings ("TGH"), from a Belgian limited liability company ("BVBA") into another Belgian entity type: a "Naamloze vennootschap/Société anonyme" ("NV/SA"), pursuant to and in accordance with Belgian corporate law (the "Entity Conversion"). *See* Exhibit A (hereinafter the "Step Plan") at 6. The Code[1] and Treasury Regulations provide for clear, mandatory consequences of the Entity Conversion, including an increase to TGH's "earnings and profits" or "E&P."[2] The DOJ attempts to disregard the Entity

---

[1] References to section are to the Internal Revenue Code (the "Code"), Title 26 of the U.S. Code.

[2] E&P is a "concept . . . utilize[d] 'to approximate a corporation's power to make distributions which are more than just a return of investment.'" *Henry C. Beck Co. v. Commissioner*, 52 T.C. 1, 6 (1969) (citation omitted), *aff'd per curiam*, 433 F.2d 309 (5th Cir. 1970).

Conversion to avoid the very tax consequences that the Code and regulations require.

However, the doctrines raised by the DOJ to disregard the Entity Conversion are not applicable. For context, the ESD developed as a judicial doctrine, and it gives the IRS the ability to set aside the tax consequences of a transaction when a transaction has no *non-tax* effects even though the taxpayer has otherwise complied with the technical tax rules. *See, e.g.*, *James v. Commissioner*, 899 F.2d 905, 908 (10th Cir. 1990) ("transactions lacking an appreciable effect, other than tax reduction, on a taxpayer's beneficial interest will not be recognized for tax purposes" (citation omitted)).

Given the extreme consequences of the ESD—disregarding transactions that are compliant with the applicable tax rules—Congress and the courts have imposed significant limitations on when and how that doctrine can be applied. Courts have long recognized that the ESD is a tool for "effectuating congressional intent" and "not [for] supplanting it." *Horn v. Commissioner*, 968 F.2d 1229, 1234 (D.C. Cir. 1992). Certain tax consequences are respected even when they arise from transactions that undisputedly have no non-tax consequences. *See, e.g.*, *id.* at 1238 (referencing "the parties' assumptions" that the transaction lacked non-tax substance). That is because, in some cases, the tax consequences of a transaction are intended to be respected even where the transaction only has tax effects. *Id.* at 1239. Allowing flexibility to make basic tax decisions is not unusual. For instance, married couples can elect to file a joint tax return or separate tax returns each year—a purely tax-motivated decision that affects the couple's tax but is nonetheless respected.

Congress has also recognized these principles. When it codified the common-law ESD in 2010 as section 7701(o), Congress stated that the ESD applies only to "relevant" transactions—

i.e., the ESD does not apply to "basic business transactions that, under longstanding judicial and administrative practice are respected, merely because the choice between meaningful economic alternatives is largely or entirely based on comparative tax advantages." H.R. Rep. No. 111-443, at 296 (2010) (hereinafter "House Report").

The Entity Conversion is such a transaction that is exempted from the ESD, because it is a type of transaction that is respected for tax purposes even if "largely or entirely based on comparative tax advantages." *Id.* As background, Treasury Regulations allow business entities to effectuate entity conversions solely for tax purposes through a tax election. *See* Treas. Reg. § 301.7701-3. In other words, Treasury has authorized entities to effectuate conversions by filing a form that, by definition, has *only tax effects*. In light of those rules, applying the ESD to the Entity Conversion would frustrate rather than further the applicable statutory and regulatory provisions. Applying a test to determine whether LGI making a tax-only election had non-tax purposes would eviscerate Treasury's elective regime. Accordingly, the ESD cannot apply to the Entity Conversion.

The DOJ's attempt to apply the step-transaction doctrine fares no better. Under the step-transaction doctrine, a court may "ignore acts taken in intermediate steps which the taxpayer has itself undone with subsequent steps." *Associated Wholesale Grocers, Inc. v. United States*, 927 F.2d 1517, 1528-29 (10th Cir. 1991). Here, no intermediate steps were undone. Thus, the step-transaction doctrine simply has no role to play.

Accordingly, LGI asks the court to rule that, as a matter of law, the ESD and step transaction doctrines do not apply in this case. Once the DOJ's arguments under these doctrines are rejected, there is no dispute that LGI is owed a refund and that judgment may be entered.

## II. BACKGROUND

The central issue in this case is whether LGI may claim a section 245A dividends-received deduction. That deduction arose when LGI sold its interest in TGH (the "TGH Transaction"). Step Plan at 7.[3] When LGI made that sale, it recognized a tax gain. Under the tax rules, that gain was required to be treated as a "dividend" for tax purposes to the extent of TGH's E&P. *See* sections 964(e)(1), 1248. LGI's position is that TGH had more E&P than the amount of the tax gain realized and, therefore, the full amount of the gain was treated as a dividend. That is important, because to the extent that LGI's gain is treated as a dividend, it is permitted to recognize a section 245A deduction for dividends received.

The DOJ is attempting to apply the ESD and step-transaction doctrine to a step of Project Soy that preceded the TGH Transaction: the Entity Conversion. As detailed below, the Entity Conversion increased TGH's E&P, and therefore increased the amount of LGI's gain from the TGH Transaction that was treated as a dividend. If the Entity Conversion is disregarded, the DOJ argues that (1) the increase in TGH's E&P from the Entity Conversion would be disregarded, (2) the portion of the gain on the TGH Transaction recharacterized as a deemed dividend would be reduced, and (3) the amount of the section 245A deduction would be reduced.

The DOJ may argue that other steps of Project Soy—e.g., Steps 1 and 2 as depicted in the Step Plan—should be disregarded. However, those steps were already disregarded for U.S. tax purposes. Thus, the question raised in this motion is whether the Entity Conversion can be disregarded for U.S. tax purposes.

---

[3] There is no dispute about what happened in Project Soy or its steps. Indeed, the DOJ previously filed the Step Plan to provide the Court with an explanation of the transaction. ECF No. 29-1.

**A. LGI's Tax Treatment of the Entity Conversion and the TGH Transaction.**

The Entity Conversion was simple: Telenet Group made the changes to its corporate charter necessary to convert from a BVBA to an NV/SA under Belgian corporate law. Step Plan at 6. This is similar to a limited liability company ("LLC") converting into a corporation.[4]

Upon a change in corporate form, the Treasury Regulations and the Code create mandatory consequences that are deemed to occur *solely for tax purposes*. These mandatory tax consequences increased TGH's E&P. To explain simply:

<u>Effect of the Entity Conversion</u>. The U.S. tax consequences of the Entity Conversion are determined by how BVBA and NV/SA entities are characterized for U.S. tax purposes. Under the Code and Treasury Regulations, similar business entities can be treated as corporations or partnerships for tax purposes, with each entity classification subject to different treatment under the Code. *See, e.g.*, section 7701(a); Treas. Reg. § 301.7701-3.[5] Business entities can also be treated as "disregarded entities," which, as it sounds, causes the entity to be ignored for U.S. tax purposes. When an entity is disregarded for tax purposes, all of its assets and income are considered to be held by its owner. Treas. Reg. § 301.7701-3.

Prior to the Entity Conversion, Telenet Group BVBA was a disregarded entity for U.S. tax purposes. The Entity Conversion caused Telenet Group to convert from a disregarded entity

---

[4] *See, e.g.*, Colo. Rev. Stat. Ann. § 7-90-201 *et seq.* (allowing the statutory conversion of "other entities," including LLCs, trusts, and associations into corporations).

[5] For example, an entity classified as a corporation for tax purposes is subject to an entity-level corporate income tax, as well as the detailed tax rules for corporations set forth in subchapter C of the Code. *See* sections 11(a) (applying the income tax to corporations), 301, 385 (applying the rules of subchapter C to corporations). In contrast, an entity classified as a partnership for tax purposes is *not* subject to an entity-level tax, and the entity is instead governed by the similarly detailed partnership rules of subchapter K of the Code.

(i.e., an unincorporated branch of its parent, TGH) to a regarded corporation (i.e., separate from TGH) for U.S. tax purposes. That is because Belgian NV/SAs are on Treasury's "list of foreign business entities that always will be classified as corporations" for tax purposes. 61 Fed. Reg. 21,989, 21,991 (May 13, 1996); Treas. Reg. § 301.7701-2(b)(8)(i).

The Deemed Exchange. When an entity converts from being a "disregarded entity" to a "regarded" corporation (like Telenet Group did here), the previously disregarded entity is deemed to be organized as a "new" corporation, meaning that the entity is treated as if it were coming into existence for the first time for U.S. tax purposes. The Treasury Regulations create a transaction that is deemed to occur for tax purposes to explain the incorporation of this entity. Specifically, the owner of the "new" corporation is treated as contributing all the assets and liabilities of the previously disregarded entity to the "new" corporation in exchange for the corporation's stock. Treas. Reg. § 301.7701-3(g)(1)(iv); Rev. Rul. 2004-59, 2004-24 I.R.B. 1050. Thus, as a result of the Entity Conversion, TGH was deemed to transfer all the assets of Telenet Group BVBA, the previously disregarded entity, to the "new" corporation—Telenet Group NV/SA—in exchange for all of the stock, preferred stock, and debt of Telenet Group NV/SA for U.S. income tax purposes (the "Deemed Exchange").

LGI's Gain Recognition. The Deemed Exchange is a transaction that is given a special name under the Code: it is a "corporate organization" governed by section 351 of the Code. Section 351(a) generally provides that no gain is recognized on the exchange of assets for a corporation's stock. Notably, however, section 351 identifies certain circumstances in which a taxpayer is *required* to recognize gain on the property contributed to the corporation. In particular, Congress has mandated that a taxpayer must recognize gain if it receives "other

property" in addition to permitted stock in an exchange subject to section 351. Section 351(b). "Other property" includes debt of the corporation, as well as certain forms of preferred stock issued by the corporation called "nonqualified preferred stock" ("NQPS"). *See* section 351(g)(2). In the Deemed Exchange, TGH was deemed to receive: (1) common shares of Telenet Group NV/SA—stock that does not trigger gain recognition pursuant to section 351(a); (2) certain "profit certificates" issued by Telenet Group NV/SA, which were treated as NQPS and triggered gain; and (3) intercompany receivables from Telenet Group NV/SA, which also triggered gain. Accordingly, in the Deemed Exchange, TGH was required to recognize gain up to the value of the profit certificates and intercompany receivables that TGH was deemed to receive.[6]

Increase in E&P. The gain that TGH recognized, in turn, increased its E&P by the same amount. E&P generally increases when a corporation earns income or recognizes gain. *See* Treas. Reg. § 1.312-6(b); section 312(a). Accordingly, when TGH recognized gain pursuant to the Entity Conversion, that gain increased TGH's E&P by a corresponding amount.

**B. Material Undisputed Facts.**

*If* the ESD applies, a transaction is disregarded for tax purposes unless (1) it "changes in a meaningful way . . . the taxpayer's [non-tax] economic position" and (2) "the taxpayer has a substantial [non-tax] purpose . . . for entering into such transaction." Section 7701(o). For

[6] To illustrate this concept, consider a simplified fact pattern where TGH incorporates a new wholly owned subsidiary, Telenet Group NV/SA, by contributing to the new corporation one asset that had $130 of built-in gain, meaning that if sold, the asset would generate gain of $130. In return, TGH received Telenet Group NV/SA's common stock, profit certificates, and debt. This transaction is subject to section 351 because it satisfies section 351's statutory criteria identified above. Under section 351(b), TGH recognizes the built-in gain up to the value of the non-common-stock property (the profit certificates and the debt). Assuming the other property received by TGH was worth $120, TGH would recognize $120 of gain in the contributed asset under section 351(b), with the remaining $10 of built-in gain in that asset being deferred.

purposes of this Motion, LGI is not arguing that the Entity Conversion satisfies that two-pronged test. Instead, LGI asks the court to decide the threshold legal question of whether the ESD is "relevant" to the Entity Conversion. That is a question of law, to which only two facts are relevant: (1) prior to the Entity Conversion, Telenet Group BVBA was treated as a disregarded entity; and (2) through the Entity Conversion, Telenet Group converted into an NV/SA. Both of those facts are undisputed.

## III. ARGUMENT

The DOJ's attempt to apply the ESD to the Entity Conversion is entirely misplaced. As described below, the ESD is not applicable here for two reasons. ***First***, Congress established that the ESD is not relevant to transactions that, under longstanding administrative and judicial practice, are exempted from the ESD. Congress specifically identified categories of transactions that are exempted from the ESD, and the Entity Conversion fits into two of those congressionally-identified categories. Longstanding administrative and judicial practice also establishes that the ESD does not apply to a taxpayer's choice of entity classification for tax purposes (which is what LGI did through the Entity Conversion). ***Second***, the DOJ's attempt to apply the ESD here would also violate the principle, recognized in the same legislative history, that a taxpayer has the right to choose how to capitalize an entity without ESD overlay.

Finally, the DOJ's argument under the step-transaction doctrine also fails. That doctrine disregards temporary steps that are later unwound, and each step of Project Soy was permanent.

### A. The Focus of the ESD Analysis is Solely the Entity Conversion.

In addressing the DOJ's ESD argument, the focus is narrowly on the Entity Conversion. Courts have repeatedly stated that ESD is applied only to the particular transaction "that gave

rise to the alleged tax benefit." *Coltec Indus., Inc. v. United States*, 454 F.3d 1340, 1356 (Fed. Cir. 2006); *see also Sala v. United States*, 613 F.3d 1249, 1252 (10th Cir. 2010) (analyzing only the specific transaction whose tax consequences were in dispute), *as amended on reh'g in part*, 2010 WL 4900924 (10th Cir. Nov. 19, 2010). Here, the tax benefit at issue—the generation of E&P—was created by the Entity Conversion, thus that is the transaction to be examined.

### B. The Entity Conversion Is Exempted From the ESD.

When Congress codified the ESD, it provided rules for how the ESD is to be applied while also explicitly excluding certain transactions from ESD consideration. The ESD applies only to "transaction[s] to which [that] doctrine *is relevant.*" Section 7701(o)(1) (emphasis added). Section 7701(o) does not itself explain how to determine whether or not the ESD is relevant, instead stating only that "[t]he determination of whether the [ESD] is relevant to a transaction shall be made in the same manner as if [section 7701(o)] had never been enacted." Section 7701(o)(5)(C). In other words, when it codified the common-law ESD, Congress recognized that courts had not applied the ESD to certain categories of transactions and Congress intended to preserve those preexisting limitations on the doctrine. Given that the statute provides only broad guidance, does not specify when the ESD is "relevant," and incorporates prior common law, it is necessary to consult both the legislative history and case law to identify the specific transactions that are excluded.[7]

The legislative history to section 7701(o) explains Congress's intent that the ESD would not apply to "basic business transactions that, under longstanding judicial and administrative

---

[7] ESD case law predating the enactment of section 7701(o) is critical to understanding the scope of that Code section. When Congress codified the ESD, it "clarifie[d] and enhance[d] the application of the ESD" without supplanting existing ESD case law. House Report at 296.

practice are respected, merely because the choice between meaningful economic alternatives is largely or entirely based on comparative tax advantages." House Report at 296. Congress then listed four categories of transactions that meet this criterium and are exempted from the ESD.[8] *Id.* In addition, Congress expressly provided that the list was not exhaustive. *Id.* at 296, n. 125. Any type of transaction that was exempted from the ESD under "longstanding judicial and administrative practice" remains exempted under the codified ESD. *Id.* at 296. More broadly, incorporating prior case law and administrative practice in applying ESD is consistent with the intent underlying section 7701(o) which was to codify prior case law. *Supra* p. 9 and note 7.

The Entity Conversion—the transaction subject to the DOJ's ESD argument—is a "basic business transaction[] that, under longstanding judicial and administrative practice" is exempted from the ESD. House Report at 296. This is shown in two ways. ***First***, the Entity Conversion falls within two of categories of such transactions that Congress expressly identified. ***Second***, longstanding judicial and administrative precedent also show that the ESD does not apply to the choice of Telenet Group's tax classification.

### 1. The Entity Conversion Fits Within Two Congressionally-Identified Categories of Transactions Exempted from the ESD.

The Entity Conversion fits within two categories of transactions that Congress expressly provided are exempted from the ESD:

Corporate Organizations. The first congressionally-identified category of transactions applicable to the Entity Conversion is the decision to enter into a "corporate organization. . .

[8] This list includes: (i) choice of capitalization of a business, (ii) choices between foreign and domestic entities; (ii) organizations of a corporate entity; and (iv) choice to use related parties.

under subchapter C." House Report at 296. A "corporate organization" is any transaction to which section 351 applies.[9] The Entity Conversion is such a transaction. As discussed above, Treasury Regulations require that the Entity Conversion results in a series of steps, all of which are deemed to occur solely for tax purposes. *Supra* p. 6. And that series of steps—i.e., the Deemed Exchange—is governed by section 351. *Id*. Indeed, the leading tax treatise recognizes that the effect of any conversion of a disregarded entity to a corporation is a "deemed § 351 transaction"—i.e., a deemed corporate organization under subchapter C. Bittker & Eustice, Federal Income Taxation of Corporations & Shareholders ¶ 2.02. That is fatal to the DOJ's ESD argument. Treasury has determined that the Entity Conversion must—*and solely for tax purposes*—be treated as a corporate organization under subchapter C. And Congress has said that a taxpayer's decision to enter into a corporate organization under subchapter C is not subject to scrutiny under the ESD.

<u>Choice of Entity</u>. The second congressionally identified category of transactions applicable to the Entity Conversion is a business's decision to choose among various legal entities to conduct its business operations—e.g., a U.S.-resident LLC, a state law partnership, or a foreign form of entity. House Report at 296. Again, the Entity Conversion fits within this exempted category. The Entity Conversion reflected LGI's choice to organize Telenet Group as an NV/SA instead of a BVBA. In the legislative history, Congress stated that the ESD is not relevant to "a U.S. person's choice between utilizing a foreign corporation or a domestic corporation to make a foreign investment." House Report at 296. And if a taxpayer can choose

[9] The portion of subchapter C that governs "Corporate Organizations" is Subpart A, Part III, which has only one section: section 351.

between a domestic or foreign entity, it must also be true that a taxpayer can choose between two different types of foreign entities—i.e., conversion from a BVBA to NV/SA—without application of the ESD. Indeed, Congress stated that the categories of transactions identified were not exhaustive, and there is no reason that a choice between two types of foreign entities (what happened here) should be treated differently from a choice between a domestic and a foreign entity. Moreover, as discussed below, judicial and administrative precedent uniformly support LGI's interpretation. *Infra* pp. 12-17.

### 2. Under Judicial and Administrative Practice, a Taxpayer's Choice of Tax Classification for Entities Is Exempted from the ESD.

Longstanding judicial and administrative practice also uniformly supports LGI's position that the Entity Conversion is exempted from the ESD. The reason why LGI engaged in the Entity Conversion—and the primary consequence of that transaction—was to change the tax classification of Telenet Group from a disregarded entity to a corporation. That decision has never been subject to the ESD, as demonstrated in four ways.

#### (a) Case Law Expressly Exempts Entity Choices from the ESD.

The case law that pre-dates the codification of the ESD recognizes that the ESD cannot be applied to a taxpayer's choice of entity. *See, e.g., United Parcel Serv. v. Commissioner*, 254 F.3d 1014, 1020 (11th Cir. 2001) (acknowledging that the ESD does not apply to "usual tax-influenced form-of-business election or a choice of debt over equity financing"); *see also* House Report at 296 nn. 126-29 (citing cases supporting the proposition that the ESD does not apply to choice-of-entity decisions). Indeed, the Sixth Circuit has stated that a taxpayer has a *right* (and even a duty) to choose how an entity is taxed "based solely on tax-reduction considerations"—i.e., without any non-tax substance. *Summa Holdings, Inc. v. Commissioner*, 848 F.3d 779, 788

(6th Cir. 2017).

**(b) The Treasury Regulations Establish that Entity Choice Is Elective and Exempted from the ESD.**

Treasury's own regulations permit taxpayers to convert an entity "for federal tax purposes" even where there are unquestionably *no non-tax consequences*. Treas. Reg. § 301.7701-3(a). In light of those rules, the ESD cannot be applicable to a taxpayer's decision of which type of entity to use. If applicable, the ESD test would require a taxpayer's choice of entity to have material non-tax substance; Treasury has determined such choices need no non-tax substance at all.

To explain further, Treasury has issued regulations that generally allow certain business entities to *choose* their entity status for tax purposes. These regulations are colloquially referred to as the "check-the-box" regulations because an entity simply checks a box on a tax form to elect its tax status. *See* IRS Form 8832, https://www.irs.gov/pub/irs-pdf/f8832.pdf. The "check-the-box" regulations provide an "elective regime" that expressly allows taxpayers to choose how an entity will be taxed. *See* T.D. 8697, 1997-1 C.B. 215, 216. To illustrate, a state-law LLC with a single owner can elect to be treated for U.S. tax purposes as a *corporation*, which is respected as an entity for tax purposes and generally subject to separate corporate-level tax. *See supra* p. 5. That separate corporate-level tax can also be eliminated—with tax only imposed at the owner level—if the LLC elects to be to treated as a "disregarded entity." *Id.*

Critically, such an election can have *only* tax consequences. When a taxpayer makes this check-the-box election, the LLC remains an LLC for all other non-tax purposes—the LLC is governed by the same charter, is subject to the same state law restrictions on LLCs, and provides the same protection to its owners from claims by the LLC's creditor. Thus, the *only* effect of the

election is a change in the LLC's tax treatment due to the taxpayer's chosen entity classification.

Because disparate tax treatment is the *only* effect of a "check-the-box" election, the election cannot be subject to the ESD. To satisfy the ESD test, a transaction must (1) "change[] in a meaningful way . . . the taxpayer's [non-tax] economic position" and (2) have "a substantial [non-tax] purpose." Section 7701(o)(1). An election that is made *solely* for tax purposes and therefore, necessarily lacks any non-tax effects—like a "check-the-box" election—could *never* satisfy this test. Thus, making the ESD applicable to a taxpayer's choice of entity would eviscerate the entire "check-the-box" regime because no check-the-box election could establish the presence of non-tax consequences. The ESD cannot be used in that way. The ESD is a tool for "effectuating congressional intent, "not supplanting it." *Horn*, 968 F.2d at 1234. Here, the Treasury Regulations expressly permit the taxpayer to choose how an entity will be taxed using a tax-only form. That authorization cannot be overridden under the guise of the ESD. *See, e.g., Sacks v. Commissioner*, 69 F.3d 982, 992 (9th Cir. 1995) (rejecting application of the ESD where the government sought to "take[] away with the executive hand what it gives with the legislative").

What is more, Treasury itself has never provided that the ESD would apply to such decisions. When it issued the check-the-box regulations, Treasury expressly contemplated the potential application of the step-transaction doctrine to certain transitory check-the-box elections (not relevant here). T.D. 8697, 1997-1 C.B. 215, 216. In contrast, Treasury never mentioned the potential application of the ESD to entity conversions. And, in fact, while Treasury contemplated including an anti-abuse provision that would allow the government to disregard entity classification elections where taxpayers used them to achieve "inappropriate" tax consequences,

Treasury ultimately decided against inclusion of such a provision. *See* Prop. Treas. Reg. § 301.7701-3(h)(1), 64. Fed. Reg. 66,591, 66,594 (Nov. 29, 1999) (withdrawn Oct. 22, 2003).

The DOJ may argue that LGI's case is distinguishable because the Entity Conversion was not itself a check-the-box election, and instead was the result of Telenet Group's conversion into an NV/SA under Belgian law. But that is a distinction without a difference. Indeed, the IRS itself has provided that an entity conversion into a corporation under local law (rather than filing a check-the-box election) is treated in the same way and has the same consequences as if a check-the-box election had been filed. Rev. Rul. 2004-59, 2004-24 I.R.B. 1050.[10] Moreover, Treasury has long recognized that taxpayers may effect changes in tax classification by changing the legal form of an entity under local law. Before it issued the check-the-box regulations, Treasury was aware that taxpayers were effectively electing their different tax entity classifications by choosing between types of local-law business entities. *E.g.*, Notice 95-14, 1995-1 C.B. 297, 297 ("taxpayers can achieve partnership tax classification for a non-publicly traded organization that, *in all meaningful respects*, is virtually indistinguishable from a corporation" (emphasis added)). Then, when it proposed the check-the-box regulations, Treasury affirmatively contemplated that an entity could, "*without restriction*," change its tax classification by converting into a different form of entity. 61 Fed. Reg. 21,989, 21,993 (May 13, 1996) (emphasis added). In other words, the tax treatment of conversions, in particular LGI's Entity Conversion, is a specified and contemplated consequence of this "elective regime." T.D. 8697, 1997-1 C.B. 215, 216.

**(c) Other Case Law Establishes that the Entity Conversion is Exempted from the ESD.**

[10] The government is bound to follow is guidance in published Revenue Rulings. *See, e.g.*, *Estate of McLendon v. Commissioner*, 135 F.3d 1017, 1024 (5th Cir. 1998).

Cases addressing a taxpayer's election of the tax classification of an entity further demonstrate that such decisions are exempted from the ESD. For example, in *Dover Corp. v. Commissioner*, 122 T.C. 324 (2004), the court considered a check-the-box election to convert a foreign subsidiary from a regarded corporation to a disregarded entity. This election had the effect of eliminating U.S. tax on the subsequent sale of the foreign subsidiary's assets. The *Dover* court gave a detailed recounting of the history of tax-entity-classification rules. After its thorough review, the court rejected the IRS's attempt to challenge the tax result of the transaction, noting that "the check-the-box [entity classification] regulations *[do not] require that the taxpayer have a business purpose for such an election* or, indeed, for any election under those regulations. Such elections are specifically authorized 'for federal tax purposes.'" *Id.* at 351 n. 19 (emphasis added) (citation omitted). Although the *Dover* court did not expressly address the ESD, its conclusion that a taxpayer may elect an entity form without a non-tax business purpose shows that such election must be outside the purview of the ESD, which expressly requires the existence of a non-tax business purpose.

**(d) Historical IRS Guidance Supports LGI's Position.**

*Neither the IRS nor the courts have ever applied the ESD to disregard a taxpayer's choice of whether an entity should be taxed as a corporation or a disregarded entity.* To the contrary, the IRS's guidance and public statements conclusively demonstrate its longstanding practice of not applying the ESD to a taxpayer's choice of an entity's tax classification. For instance, the IRS has ruled that a taxpayer may change the tax classification of a foreign entity for the sole purpose of obtaining a tax benefit. *See* Rev. Rul. 2003-125, 2003-52 I.R.B. 1243 (ruling that a taxpayer may change the tax classification of a foreign subsidiary to obtain a tax

loss on the subsidiary's stock). In discussing this ruling, a senior IRS official reiterated "[t]he view of the government" that a taxpayer's decision to change a tax entity classification as described in the ruling would not be subject to the ESD because "that's not a relevant inquiry for that particular fact pattern." Amy S. Elliott, *Codification of Economic Substance Should Have Minimal Effect on Practice, IRS Official Says*, 2010 Tax Notes (TA) 90-2 (May 11, 2010). And this longstanding administrative practice has not gone unnoticed; commentators have likewise recognized that "'fictions' created by the Code or Regulations [including the results of choosing a different form of entity] should also not be subject to challenge under the [ESD]." *ABA Members Seek More Guidance on Codification of Economic Substance Doctrine*, 2011 Tax Notes (TA) 12-13 (Jan. 18, 2011).

For the reasons above, the ESD cannot be applied to disregard the Entity Conversion. On that basis alone, the DOJ's argument must be rejected:

- Regulations prescribe the consequences of the Entity Conversion: TGH made a Deemed Exchange of assets for Telenet Group NV/SA's common stock, NQPS, and debt.
- As a result of that Deemed Exchange and under section 351, TGH was required to recognize gain up to the value of the NQPS and debt. This gain increased TGH's E&P.

That analysis ends the inquiry—the gain and E&P recognized as a result of the Entity Conversion must be recognized and cannot be disregarded under the ESD.

### C. The ESD Also Cannot Be Applied to Disregard Telenet Group's Choice to Capitalize Using NQPS and Debt.

The DOJ may attempt to argue that the NQPS and debt received by TGH in the Deemed Exchange should be disregarded under the ESD. However, such an argument would also

contradict 7701(o), its legislative history, and case law.

When the ESD was codified, Congress stated that the doctrine is not relevant to decisions of how an entity is capitalized. *See* House Report at 296 ("the choice between capitalizing a business enterprise with debt or equity"). This is consistent with longstanding judicial precedent. *See Kraft Foods Co. v. Commissioner*, 232 F.2d 118, 127-28 (2d Cir. 1956) (declining to apply the ESD to disregard a tax-motivated decision to capitalize a corporation with debt not equity).

The NQPS and debt that gave rise to gain and E&P in the Entity Conversion reflect a choice of how to capitalize Telenet Group. Telenet Group could have been capitalized solely through common stock, which is the result that the DOJ seeks to achieve. However, Telenet made the decision that Telenet Group should be capitalized with common stock, NQPS, and debt. That decision is not subject to ESD review.

What is more, Congress has accepted this result. As detailed above, *supra* p. 6-7, section 351 prescribes whether and to what extent the taxpayer will recognize gain in connection with the Deemed Exchange. That section generally provides that any exchange of assets to a corporation *solely* for stock will be a non-recognition transaction. *See* section 351(a). However, Congress also mandated that, in certain circumstances, a taxpayer is *required to recognize gain* under section 351, which is what occurred in LGI's Deemed Exchange. *E.g.*, section 351(b) (prescribing rules for gain recognition); section 351(g) (gain recognized if corporation transfers NQPS). Congress has long understood that taxpayers, such as LGI, may use these rules to trigger gain recognition, in particular by issuing stock that is NQPS under section 351(g). Congress considered multiple proposals to change this NQPS rule to prevent such tax planning but has repeatedly declined to do so. *See, e.g.*, Department of the Treasury, *General Explanations of the*

*Administration's Fiscal Year 2017 Revenue Proposals*, 239 (Feb. 2016), https://home.treasury.gov/system/files/131/General-Explanations-FY2017.pdf. ("NQPS is treated like debt for certain limited purposes but is otherwise generally treated as stock. This hybrid nature of NQPS has transformed it into a staple of affirmative corporate tax planning . . . .").[11] However, Congress has never made such a change and is therefore presumed to have accepted this result. *Flood v. Kuhn*, 407 U.S. 258, 283-84 (1972) (holding that Congress "clearly evinced a desire" to accept the result of its statutes "by its positive inaction").

**D. The Step-Transaction Doctrine Does Not Apply in this Case.**

The DOJ also attempts to invoke another judicial doctrine: the "step-transaction doctrine." However, that doctrine is likewise inapplicable to Project Soy. Under the step-transaction doctrine, a court may "ignore acts taken in intermediate steps which the taxpayer has itself undone with subsequent steps." *Associated Wholesale Grocers*, 927 F.2d at 1528-29. In *Associated Wholesale Grocers*, for instance, a taxpayer sold its subsidiary to another company (to generate a tax loss), but immediately repurchased all of the subsidiary's assets except a single grocery store. The Tenth Circuit held that in substance this was a sale of a single grocery store. Applying the step-transaction doctrine, the court disregarded the transitory transfer and immediate repurchase of the non-grocery store assets.

The same is not true for LGI. Each of the steps of Project Soy was permanent; none was undone. Under the step transaction doctrine, the government must have a "logically plausible

[11] Each year from 2012 to 2017, Treasury proposed to Congress that section 351(g) be repealed. *See, e.g.*, Department of the Treasury, *General Explanations of the Administration's Fiscal Year 2012 Revenue Proposals*, 88 (Feb. 2011), https://home.treasury.gov/system/files/131/General-Explanations-FY2012.pdf.

alternative explanation that accounts for all the results of the transaction." *Turner Broad. Sys., Inc. v. Commissioner*, 111 T.C. 315, 327 (1998). Here, it is not possible to collapse the steps of Project Soy in a way that would nonetheless still create the same end result of the transaction. Accordingly, the step transaction doctrine is inapplicable here.

## IV. CONCLUSION

For the foregoing reasons, the Court should hold that, as a matter of law, neither the ESD nor the step-transaction doctrine can apply to disregard any step of Project Soy.

Respectfully submitted this 28th day of July, 2023.

/s/ Rajiv Madan
**Rajiv Madan**
Skadden, Arps, Slate, Meagher & Flom LLP
1440 New York Avenue, N.W.
Washington, DC 20005
Telephone: (202) 371-7020
Fax: (202) 661-9020
E-mail: raj.madan@skadden.com
*Attorneys for Plaintiff Liberty Global, Inc.*

Gregory S. Tamkin
Dorsey & Whitney LLP
1400 Wewatta Street, Suite 400
Denver, CO 80202-5549
Telephone: (303) 629-3400
Fax: (303) 629-3450
E-mail: tamkin.greg@dorsey.com

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and paper copies will be sent to those indicated as non-registered participants on July 28, 2023.

/s/ Rajiv Madan
**Rajiv Madan**
Skadden, Arps, Slate, Meagher & Flom LLP
1440 New York Avenue, N.W.
Washington, DC 20005-2111
Telephone: (202) 371-7020
Fax: (202) 661-9020
E-mail: raj.madan@skadden.com
*Attorney for Plaintiff Liberty Global, Inc.*