# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 20-cv-03501-RBJ

LIBERTY GLOBAL, INC.,

      Plaintiff,

v.

UNITED STATES OF AMERICA,

      Defendant.

---

## PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

---

## I.    INTRODUCTION

The DOJ's Motion for Summary Judgment (ECF No. 76, the "DOJ MSJ") ignores the governing statute, contradicts judicial and administrative precedent, and must be rejected.

As detailed in LGI's Motion for Summary Judgment (ECF No. 75, the "LGI MSJ"), the doctrines invoked by the DOJ—the ESD[1] and the related step transaction doctrine—are subject to well-established limitations on when and how they apply. As Congress recognized when it codified the ESD, that doctrine is not "relevant" to certain types of transactions. Section 7701(o)(1). Thus, many transactions—including the one at issue here—are explicitly exempted from the application of ESD. Similarly, the step transaction doctrine can only be applied to disregard transitory or temporary steps that are later reversed. No such steps exist here, and therefore that doctrine is similarly inapplicable.

The DOJ completely ignores these fundamental, threshold restrictions on the doctrines it seeks to invoke. Although the DOJ has long known that LGI's sole argument is that these

---

[1] All capitalized terms not defined herein have the same meaning as in the LGI MSJ.

doctrines are not relevant to the transactions at issue (Joint Status Report at 5, ECF No. 50; Joint Letter at 2, ECF No. 70), the DOJ fails to substantively address or analyze whether the relevant transactions are exempted from the ESD. And while the DOJ has repeatedly conceded that the ESD is applicable only to certain transactions—*see, e.g.*, DOJ MSJ at 15 (quoting section 7701(o)(5)(C) which references relevance requirement); Status Conf. Tr. 11, ECF No. 62 (DOJ referring to "question for relevance" of ESD)—it offers no meaningful analysis of how that gating determination should be made. Instead, the DOJ spends much of its brief on facts regarding the tax considerations for Project Soy that are not in dispute. The DOJ's efforts to paint LGI's transaction in a negative light should not influence the Court in resolving this purely legal dispute.

To the extent that the DOJ does propose a standard for when a transaction is exempted from the ESD, that standard is plainly incorrect. Most fundamentally, the DOJ's standard cannot be reconciled with the statute and associated legislative history. Whereas the DOJ argues that the relevancy determination should be based on the type of _benefits_ that a taxpayer receives, Congress contemplated that the ESD would not be relevant to "certain basic business transactions"—even if those transactions offered "comparative tax advantages." H.R. Rep. No. 111-443, at 296 (2010) ("House Report"). In doing so, Congress clearly intended to exclude certain types of _transactions_ without an analysis of their resulting tax benefits. Thus, the DOJ's relevancy test cannot be reconciled with key congressional guidance.

Moreover, the DOJ suggests a standard that is entirely circular, arguing that the ESD is relevant when a transaction "lacks 'an appreciable effect, other than tax reduction.'" DOJ MSJ at 15 (citation omitted). That standard is applied when determining whether a transaction _satisfies_

*the two-pronged ESD test*; it comes into play only *after* the doctrine is first determined to be applicable. Thus, according to the DOJ's backward logic, the ESD is relevant to any transaction to which the ESD applies. That would render moot Congress's mandate that certain types of transactions are exempted from the ESD.

And even if DOJ's tax-results test were accepted, they misapply it here. Indeed, the portion of Project Soy that the DOJ seeks to disregard is wholly separate from the purported violation of congressional intent. More specifically, the DOJ argues that Project Soy was improper because it allowed LGI "to recognize substantial gains on the sale of [TGH] without paying any tax at all." DOJ MSJ at 15. Given that complaint, one might expect that the DOJ is asking the Court to disregard the offending sale of TGH—i.e., Step 4. Not so. The DOJ's position is that Step 4 should be respected and only Steps 1-3 should be disregarded. *See*, *e.g.*, *id.* at 2, 18. In particular, the DOJ complains about and asks the Court to disregard the E&P generated by Steps 1-3. *Id.* at 17. As explained below, the consequences of Steps 1-3 are fully consistent with both the applicable technical rules and the intent underlying those rules.

The DOJ's attempt to use the alleged improper consequence of one transaction—Step 4—as justification for disregarding another transaction—Step 3 or the Entity Conversion—is inconsistent with ESD case law. As courts have repeatedly recognized—often *at the insistence of the government*—that the ESD inquiry is narrowly focused on the transaction that gives rise to the tax consequences in question. *See, e.g.*, *Sala v. United States*, 613 F.3d 1249, 1252 (10th Cir. 2010). Here, the DOJ has asked the Court only to disregard the E&P generated through Steps 1-3. Thus, the determination of whether the ESD is relevant must be made only in the context of those Steps. In this regard, the law is clear that the ESD has no application to Steps 1-3.

The DOJ's alternative arguments based on the ESD and the step transaction doctrine are desperate attempts to retroactively and impermissibly override the Tax Code. Throughout this case, the DOJ has argued that the government has unfettered discretion to change the tax rules to close a perceived loophole. The Court has already rejected one such attempt, holding that the government failed to comply with the simplest requirements of administrative law before issuing regulations. The DOJ's attempts to ignore longstanding legal restraints on the applicability of the ESD and the step transaction doctrine should also be rejected. LGI's MSJ should be granted.

## II.     SUMMARY OF PROJECT SOY AND THE DOJ'S POSITION

There is no factual dispute in this case. The parties agree regarding what happened in Project Soy and regarding its tax consequences under the general tax rules:

- Through Steps 1-3 of Project Soy, Telenet undertook steps that generated "E&P for TGH." DOJ MSJ at 9. Of these, Steps 1 and 2 were already disregarded for U.S. tax purposes. Thus, the critical step was Step 3: the Entity Conversion in which Telenet Group converted from a BVBA to an NV/SA, became a corporation for U.S. tax purposes, and was deemed to issue its debt and profit certificates to TGH. *See id.* at 6-7. The DOJ agrees, acknowledging that Step 3 was the "E&P generating step." *Id.* at 6.

- In Step 4 (the TGH Transaction), LGI sold its interest in TGH to Liberty Global plc. *Id.* at 7. The tax gain that LGI realized on the TGH Transaction was treated "as a dividend" and LGI "claim[ed] a § 245A deduction" that offset the $2.4 billion dividend. *Id.* at 8.

The parties' disputes in these cross-motions for summary judgment relate to the DOJ's attempts to invoke the ESD and the step transaction doctrine. Specifically, the DOJ seeks to selectively disregard some (but not all) of the tax consequences of Project Soy. Although it is clear that the

DOJ's ultimate goal is to disallow the section 245A deduction that LGI claimed as a result of the sale in Step 4 (DOJ MSJ at 15), the DOJ does not argue that Step 4 should be disregarded. As discussed below, the DOJ's position *depends* on respecting or taking into account Step 4. *Infra* p. 18. If Step 4 were disregarded, then LGI's section 245A deduction would be disallowed, *but the very gain that the DOJ seeks to tax would also be ignored* and LGI would be entitled to a refund. *Infra* p. 18. Thus, the DOJ seeks to walk a tightrope and asks the Court to disregard only Steps 1-3. DOJ MSJ at 18. Under the DOJ's theory, if those steps are disregarded, then the E&P of TGH would be reduced, which would have the effect of partially disallowing LGI's section 245A deduction. Thus, the question here is whether Steps 1-3—and only those steps—can be disregarded. For the reasons discussed below, neither the ESD nor the step transaction doctrine can be applied as the DOJ suggests.

## III.     THE ENTITY CONVERSION IS EXEMPT FROM THE ESD

With respect to the ESD, the fundamental dispute between the parties is whether Steps 1-3 of Project Soy are exempt from the ESD. For the reasons discussed below, they are.

### A.     The DOJ's ESD Argument Is Focused Solely on Steps 1-3.

Before getting to the question of whether the ESD applies, it is important to first determine the framework for applying that doctrine. A proper ESD analysis must be narrowly focused on "the transaction . . . that gave rise to the alleged tax benefit." *Coltec Indus., Inc. v. United States*, 454 F.3d 1340, 1356 (Fed. Cir. 2006). LGI explained this fundamental principle in its opening brief. LGI MSJ at 8-9. The DOJ does not dispute this point, and in fact cites the same cases as LGI did in its brief. DOJ MSJ at 17 (citing *Coltec* and *Sala*).

Notably, this principle of applying the ESD with a narrow lens comes from the

government's own arguments under that doctrine. Take the *Sala* case as an example. There, Mr. Sala undertook two, intertwined investments: one involving an entity named Deerhurst LLC and one involving an entity named Deerhurst GP. 613 F.3d at 1251. The Deerhurst LLC investment was profitable and plainly had economic substance, and Mr. Sala argued that substance also legitimized his Deerhurst GP investment. *Id.* at 1253. Mr. Sala argued that the two investments should be considered together, because they were part of the same plan and because he was required from the outset to roll the money from his Deerhurst GP investment into the Deerhurst LLC program. *Id.* at 1252. The DOJ argued that this broad inquiry was improper, and that the ESD analysis should focus only on the Deerhurst GP investment because that was the transaction that gave rise to the tax benefit at issue: a tax loss. *Id.* at 1252-53. Despite the links between the two investments, the Tenth Circuit agreed with the DOJ and held that "circuit precedent dictates that we not consider" the subsequent Deerhurst LLC investment. *Id.* at 1253.

Here, that same Tenth Circuit precedent dictates that the ESD analysis be narrowly focused on the Entity Conversion. The DOJ has made clear that the tax benefit it is seeking to disregard is E&P of TGH, and the DOJ further acknowledges that Step 3—the Entity Conversion—was the "E&P generating step." DOJ MSJ at 6. Indeed, the DOJ appropriately asks "the Court to scrutinize the E&P generating transactions." *Id.* at 17.

### B. The Entity Conversion Is Exempted From the ESD.

As detailed in LGI's opening brief, the E&P generating transactions—Steps 1-3 and in particular the Entity Conversion—are exempted from the ESD. As the DOJ acknowledges in passing, Congress has expressly provided that the ESD is not relevant (i.e., not applicable) to all transactions. Section 7701(o)(1); DOJ MSJ at 15 (quoting section 7701(o)). Congress further

clarified that, in providing that limitation, it meant to exempt from the ESD "basic business transactions that, under longstanding judicial and administrative practice are respected, merely because the choice between meaningful economic alternatives *is largely or entirely based on comparative tax advantages*." House Report at 296 (emphasis added).

The Entity Conversion, and Steps 1 and 2 of Project Soy which are already disregarded for U.S. tax purposes, are among the types of transactions that are exempted from the ESD:

- Judicial precedent shows that the ESD has never been applicable to an entity's choice of tax classification. *See* LGI MSJ at 12; *United Parcel Serv. v. Comm'r*, 254 F.3d 1014, 1020 (11th Cir. 2001) (acknowledging that the ESD does not apply to "usual tax-influenced form-of-business election").

- The Entity Conversion fits squarely within two other exempted categories of transactions: (1) a "corporate organization" (i.e., a transaction, like the Entity Conversion, to which section 351 applies) and (2) the choice to conduct a business using various legal entities. *See* LGI MSJ at 10-12; House Report at 296.

- The check-the-box regulatory regime[2] expressly permits taxpayers to elect how their business entity will be treated for U.S. federal income tax purposes—an election permitted by the Treasury Regulations even though it is made only for tax purposes and results *only* in tax consequences. *See* LGI MSJ at 12-17; Treas. Reg. § 301.7701-3(a);

---

[2] Although the Entity Conversion was not itself a check-the-box tax classification election, and instead was the result of Telenet Group's conversion into an NV/SA under Belgian law, that is a distinction without a difference. An entity conversion into a corporation under local law (rather than filing a check-the-box election) is treated in as the same choice of tax classification as if a check-the-box election had been filed. *See* Rev. Rul. 2004-59, 2004-24 I.R.B. 1050, as discussed in LGI's MSJ at 15.

*Dover Corp. v. Comm'r*, 122 T.C. 324, 351 n.19 (2004). And the government has commonly permitted the use of check-the-box elections in affirmative tax planning transactions in order to create tax benefits. *See, e.g.*, Rev. Rul. 2003-125, 2003-52 I.R.B. 1243 (ruling that a taxpayer may change the tax classification of a foreign subsidiary to obtain a tax loss on the subsidiary's stock); PLR 201829004 (July 20, 2018) (citing Rev. Rul. 2003-125); PLR 201115001 (Apr. 15, 2011) (same).

- The IRS has never successfully challenged a choice-of-entity election and indeed has permitted entities to change their tax classification in order to obtain a tax benefit. LGI MSJ at 16.

- The NQPS and debt of Telenet Group that TGH received as a result of the Entity Conversion—the assets that caused the increase in E&P—are also exempted from the ESD, because each relates to a choice of how Telenet Group is capitalized. *See* LGI MSJ at 17-19; *Kraft Foods Co. v. Comm'r*, 232 F.2d 118, 127-28 (2d Cir. 1956) (declining to apply the ESD to disregard a tax-motivated decision to capitalize a corporation with debt not equity).

For all those reasons, the transaction that the DOJ seeks to disregard are exempt from the ESD.

### C. The DOJ Fails to Meaningfully Address the Relevancy of the ESD.

Although it has long known that LGI's sole argument related to the ESD is that the doctrine is not relevant to the transactions at issue, the DOJ largely elides this critical issue. At most, the DOJ devotes two pages of its MSJ to the relevancy of the ESD. Indeed, the DOJ does not even mention, much less distinguish, section 7701(o)'s legislative history or any of the case law and other guidance upon which LGI relies. Instead, the DOJ asks the Court to make the

standard for determining whether a transaction is exempt from the ESD into a pure smell test. According to the DOJ, the ESD is relevant whenever a transaction: has "red flags"; "lacks 'an appreciable effect, other than tax reduction'"; or if "the transaction's [tax] benefits are [not] what Congress intended." DOJ MSJ at 15 (citations omitted). These characteristics identified by the DOJ are considered by Courts, but only <u>after</u> it is determined that the taxpayer executed a type of transaction that is subject to ESD. For the reasons below, the DOJ's position must be rejected.

     **1.  The DOJ's Relevancy Standard Contradicts the Law.**

The DOJ argues that the determination of whether a transaction is exempt from the ESD should be based on a review of its tax benefits. According to the DOJ, the ESD is relevant when a transaction "lacks 'an appreciable effect, other than tax reduction.'" DOJ MSJ at 15 (citation omitted). And the DOJ further argues that the Court should look to "whether the transaction's benefits are what Congress intended." *Id.*

That cannot be the test that Congress intended when it exempted certain types of transactions from the scope of the ESD. Section 7701(o) says nothing about the nature of the claimed *tax benefits*—the DOJ's focus—but instead repeatedly focuses on the *type of transaction* at issue. *See, e.g.*, section 7701(o)(1) ("In the case of any *transaction* to which the [ESD] is relevant . . ."); section 7701(o)(5)(C) ("The determination of whether the [ESD] is relevant to a *transaction* . . ."). And the legislative history is also focused on the type of transaction at issue. In the key legislative history, Congress identified four categories of transactions that were exempted from the ESD:

> the choice between capitalizing a business enterprise with debt or equity; (2) a U.S. person's choice between utilizing a foreign corporation or a domestic corporation to make a foreign investment; (3) the choice to enter a transaction or

> series of transactions that constitute a corporate organization or reorganization under subchapter C; and (4) the choice to utilize a related-party entity in a transaction, provided that the arm's length standard of section 482 and other applicable concepts are satisfied.

House Report at 296. In contradiction of the DOJ's focus on the type of tax benefits generated, Congress never suggested that those types of transactions might still be subject to the ESD if they generated unintended tax consequences. In fact, Congress found the tax benefits of such transactions to be irrelevant; these "basic business transactions" are exempt from the ESD even if they offer "comparative tax advantages." House Report at 296. Thus, it is clear from the legislative history of section 7701(o) that Congress intended certain types of transactions to be exempt from the ESD, rather than focusing on the types of tax benefits that might be created.

The DOJ's proposed relevancy test, which examines whether tax benefits resulting from a transaction were consistent with Congressional intent, cannot be reconciled with what Congress said when it enacted section 7701(o). For example, Congress specifically stated that the "choice between capitalizing a business enterprise with debt or equity" would be exempted from the ESD. However, the DOJ would ignore that exemption and nevertheless disregard the taxpayer's choice if, for example, it allowed a taxpayer to claim tax benefits that were deemed to be unintended. If there were such a tax-results-oriented overlay to the relevancy standard, then Congress's list of exempted categories of transactions would make no sense.

Because the DOJ's test for when a transaction is exempted from the ESD conflicts with the language of the statute and congressional intent, it must be rejected.

### 2.  The DOJ's Proposed Relevancy Test Is Circular.

The test that the DOJ proposes for determining when the ESD is relevant has another fundamental problem: it is entirely circular. Under the DOJ's argument, the Court would simply

apply the ESD test to every transaction, and the doctrine would be "relevant" to any transaction that fails to satisfy that test. That would render superfluous Congress's express statement that the ESD is relevant only to certain types of transactions.

To explain: The DOJ argues that the ESD is relevant to a transaction that lacks "an appreciable effect, other than tax reduction." DOJ MSJ at 15. But that is the test for assessing whether a transaction satisfies the economic substance test. When administering the ESD test, the ESD asks whether "the transaction changes in a meaningful (apart from Federal income tax effects) the taxpayer's economic position"—a standard materially identical to the DOJ's proposed relevancy test. Section 7701(o)(1)(A). Thus, the DOJ is effectively asking the Court to hold that the ESD is relevant to any transaction that fails the ESD test. That is circular and improper. Instead, the ESD is properly applied in two, distinct stages:



The case law that the DOJ cites in support of its test does not discuss whether a transaction is exempted from the ESD (Stage 1), but instead discusses how to *apply* the ESD to transactions when it is relevant (Stage 2). For example, the main authority that the DOJ cites on this issue is *Blum v. Commissioner*, 737 F.3d 1303 (10th Cir. 2013).[3] That entire case is about whether the transaction satisfied the test for Stage 2 of the ESD—i.e., whether it had sufficient

---

[3] The government typically does not attempt to apply the ESD to the types of transactions exempted from the ESD, so there are few cases that directly address this issue.

non-tax economic effects and non-tax business purpose. *See Blum*, 737 F.3d at 1308-13. It was in that context—the application of the ESD where it is relevant—that the Tenth Circuit made the statements that the DOJ quotes. *Id.* at 1310; DOJ MSJ at 15.

By misusing the cases in this way, the DOJ creates a proposed test that ignores the plain text of the Tax Code. If the DOJ were correct, then it would render a portion of section 7701(o)(1) entirely superfluous. Specifically, Congress could have written section 7701(o)(1) to state simply that "A transaction shall be treated as having economic substance only if . . . ," since the DOJ's standard applies the ESD test to every transaction. But Congress said more, providing that the ESD test is to be applied only "[i]n the case of any transaction to which the [ESD] is relevant." Section 7701(o)(1). The DOJ's test improperly gives those words no effect. *See Astoria Fed. Sav. & Loan Ass'n v. Solimino*, 501 U.S. 104, 112 (1991) ("But of course we construe statutes, where possible, so as to avoid rendering superfluous any parts thereof.")

Finally, the legislative history of section 7701(o) contradicts the DOJ's test. Whereas the DOJ says the ESD is relevant when transactions lacks "an appreciable effect, other than tax reduction," DOJ MSJ at 15, Congress made clear that certain transactions would be exempted from the ESD even though "the choice between meaningful economic alternatives *is largely or entirely based on comparative tax advantages*." House Report at 296 (emphasis added). This legislative history reflects the principle that Congress "has the power to grant beneficial tax treatment to economically meaningless behavior." *Horn v. Comm'r*, 968 F.2d 1229, 1234 (D.C. Cir. 1992). By expressly including a standalone relevancy requirement when codifying the ESD, it is clear that Congress intended certain specified tax-motivation transactions—i.e., "economically meaningless behavior" that would fail the two-pronged test for economic

substance—to be exempt from the application of ESD.

That decision to exempt such transactions from ESD makes sense, because the tax law allows companies to make elections and execute transactions that are solely driven by tax considerations. Here, the decision of whether to be classified as a disregarded entity or a regarded entity (e.g., Telenet Group's decision to operate as a BVBA or NV/SA) is a tax decision made solely for tax purposes—similar to the many other elections permitted under the Tax Code and Treasury Regulations that are inherently tax motivated.[4] Tax elections, therefore, by their nature cannot satisfy the ESD test. It therefore _**must**_ be the case that such elections cannot be subject to the ESD; if the ESD were relevant to such elections, then such elections would be illusory because the government could always reverse them to collect more tax.

### 3.   The DOJ Misapplies Its Own, Flawed Exemption Test.

As discussed above, the DOJ's test for determining relevance is incorrect—the relevance of that doctrine cannot be based on a free-floating analysis of whether the tax consequences of a transaction are "too good to be true." _See_ DOJ MSJ at 15. But even assuming, _arguendo_, that were the standard, the DOJ misapplies its own flawed test by improperly focusing on the wrong transaction. The DOJ has asked the Court to "apply the [ESD] and disregard the abusive Steps 1-3." DOJ MSJ at 18. However, all of the DOJ's allegations of "abuse" and all of the purported unintended tax results arise from Step 4. That is improper, because it focuses on the wrong

---

[4] Tax elections are creatures of statutory and administrative grace that by their nature invite taxpayers to choose the rules that provide them with the best tax result. For example, an individual taxpayer can elect to take the standard deduction or to itemize its deductions in determining taxable income. _See_ section 63. In the corporate context, domestic entities under common control can elect (but are not required to) file a consolidated tax return, which allows such affiliated entities to share tax attributes such as tax losses and credits to reduce overall taxable income. _See_ section 1502.

transaction. Moreover, the DOJ's argument is contingent upon *respecting* Step 4.

### a. The DOJ Cannot Use the Result of Step 4 to Justify its Arguments Regarding Steps 1-3.

The DOJ's abuse-based argument mixes and matches the alleged abuse (stemming from Step 4) and the transaction to which the DOJ is seeking to apply the ESD (Steps 1-3). That is legally improper. When considering the application of the ESD, the transaction to be analyzed is the narrow transaction that gives rise to the tax benefit at issue. *Supra* pp. 5-6. Thus, even if it were proper to determine whether a transaction is exempted from the ESD based on whether its tax benefit is permissible, the focus must be on the specific code provision at issue.

The DOJ's position violates this foundational principle. Their argument is premised on the view that Congress intended for "only earnings that are exempt from GILTI [to] be eligible for the § 245A dividend-received deduction." DOJ's MSJ at 16 (citation omitted). The DOJ argues that Congress did not "intend[] to allow multinationals to recognize substantial gains on the sale of CFCs without paying any tax at all." *Id.* at 15. But the gain the DOJ complains about was the $2.4 billion gain realized on LGI's sale of TGH—i.e., Step 4 of Project Soy. *See id.* at 7 ("the sale [of TGH] yielded LGI a gain of $2.4 billion."). And the "§ 245A deduction" that "offset the entire $2.4 billion" gain also arose only as a consequence of Step 4. *Id.* at 8.

The DOJ is not permitted to look past "the particular portion of the Code in question" and instead focus on "the merits of the transaction in the abstract or the protection of the Code's integrity as a whole" *See* James S. Halpern, *Putting the Cart before the Horse: Determining Economic Substance Independent of the Language of the Code*, 30 Va. Tax Rev. 327 (2010). *Humphreys v. Commissioner*, 301 F.2d 33 (6th Cir. 1962), neatly illustrates this limiting principle. The government sought to apply the ESD to disregard a transaction, arguing that it

improperly allowed Mr. Humphreys to obtain duplicative deductions. The Sixth Circuit rejected the government's broad assertion that the potentially unintended interaction between two code provisions could be used as the basis to disregard a transaction, instead upholding the transactions because "both deductions are allowed by statute." *Id.* at 33-34 (footnotes omitted). Courts have recently reached similar results in denying government attempts to apply the substance-over-form doctrine, which is closely related to the ESD. *See, e.g.*, *Benenson v. Comm'r*, 887 F.3d 511, 523 (1st Cir. 2018) ("When, as here, we find that the transaction does not violate the plain intent of the relevant statutes, we can push the doctrine no further."), *rev'd & remanded by* 910 F.3d 690 (2d Cir. 2018); *Summa Holdings, Inc. v. Comm'r*, 848 F.3d 779, 790 (6th Cir. 2017) (similar).

### b. The E&P Generated by Steps 1-3 Is Consistent With Congressional Intent.

In the instant case, the tax benefit the DOJ is seeking to ignore through an application of the ESD is the creation of E&P that resulted from the Entity Conversion. Indeed, the DOJ itself emphasizes that it is "E&P generating transactions" that should be analyzed by the Court—though it fails to adhere to that rule. DOJ MSJ at 17. Nowhere in its brief does the DOJ explain how the E&P generated through Steps 1-3 of Project Soy violates the intended results of the rules that govern TGH's increased E&P. That is because the E&P generated by those steps is exactly in accordance with the relevant rules:

- The DOJ alleges that the E&P generated by Project Soy was "artificial" *see, e.g.*, DOJ MSJ at 4, but that bald assertion is false. The E&P was generated because of "LGI's successful investment in [Telenet]" that had caused Telenet's assets to appreciate in value. *See* DOJ MSJ at 1. The Entity Conversion simply caused that real gain, which was

previously deferred, to be recognized for U.S. tax purposes and thereby created E&P.

- The E&P that the DOJ seeks to ignore was generated by the mandatory tax consequences of the Entity Conversion under Treas. Reg. § 301.7701-3. Under those rules, TGH was deemed to receive: (1) common shares of Telenet Group NV/SA—stock that did not trigger gain recognition pursuant to section 351(a); (2) "profit certificates" issued by Telenet Group NV/SA, which are treated as NQPS and triggered gain recognition pursuant to section 351(b); and (3) certain intercompany debt of Telenet Group NV/SA, which also triggered gain recognition under section 351(b).

- The DOJ acknowledges that the deemed transaction described above is a "corporate organization" governed by section 351 of the Code. *See* DOJ MSJ at 8-9.

- The DOJ further recognizes that, as a result of that section 351 transaction, TGH "trigger[ed] a gain under § 351(b), which in turn created E&P." DOJ MSJ at 9.

The recognition of gain from that transaction and the concomitant creation of E&P is exactly what was intended under the governing tax rules. Treasury mandated that upon the Entity Conversion, there would be a Deemed Exchange that occurs solely for tax purposes, and that exchange is a section 351 transaction. Moreover, Congress has thought about when a section 351 transaction should give rise to gain and therefore to E&P. Section 351(a) generally provides that no gain is recognized on the exchange of assets for a corporation's common stock. But Congress has also determined that when a section 351 transaction involves the issuance of assets other than common stock (such as cash, debt, or NQPS, which is economically akin to debt), a taxpayer is required to recognize gain because it has cashed out its investment in the transferred property. *See* DOJ MSJ at 9 (citing sections 351(b) and 351(g)); *see also* H.R. Rep. No. 105-148, at 472

(1997) ("The Committee believes that when such preferred stock instruments [NQPS] are received in certain exchange transactions, it is appropriate to view such instruments as taxable consideration since the investor has often obtained a more secure form of investment."). Indeed, Congress has long understood that section 351(g)—which gives rules for the NQPS at issue here—is "a staple of affirmative corporate tax planning" that taxpayers can use to trigger gains when advantageous. Department of the Treasury, *General Explanations of the Administration's Fiscal Year 2017 Revenue Proposals*, 239 (Feb. 2016). For example, someone might choose to use NQPS to trigger gain through a section 351 transaction in order to accelerate the recognition of gain before an anticipated increase in tax rates takes effect. *See* Jasper L. Cummings, *Subchapter C Changes in the Biden Administration*, 170 Tax Notes 427, 437 (Jan. 18, 2021). Yet Congress has never changed those rules and has therefore acquiesced to such affirmative tax planning techniques. *See* LGI MSJ at 18-19. So too has the IRS. *See e.g.* PLR 201418025 (May 2, 2014) and PLR 201334006 (Aug. 23, 2013). In similar circumstances, the Tax Court has declined to apply the ESD to disallow a result where "Congress was fully aware of the tax-avoidance possibilities" and yet "[took] no action to restrict" that result. *Morris Trusts Nos. 401 Through 410 v. Comm'r*, 51 T.C. 20, 42 (1968), *aff'd*, 427 F.2d 1361 (9th Cir. 1970). Thus, for the transactions actually at issue under the DOJ's arguments—Steps 1-3—the tax "benefit" generated—E&P—is exactly in accordance with the relevant congressional intent.

### c.   The DOJ Must Respect Step 4.

It may seem odd that the DOJ's complaints are about the tax consequences of Step 4—the recognition of a $2.4 billion gain that is untaxed because of an offsetting section 245A deduction—and yet it does not seek to disregard that step. But the DOJ has quite intentionally

chosen not to challenge that transaction—and for good reason. If Step 4 were disregarded under the ESD, then that would require that *all* consequences of that transaction be disregarded. *See, e.g.*, *Lerman v. Comm'r*, 939 F.2d 44, 45 (3d Cir. 1991) ("If a transaction is devoid of economic substance . . . it simply is not recognized for federal taxation purposes, for better or for worse."); *Seykota v. Comm'r*, 62 T.C.M. (CCH) 1116, 1118 (1991) (holding in a case involving the ESD that "we should give effect either to both the cost and the income functions, or to neither"). That would mean that LGI could not claim a section 245A deduction, but it would not need to do so—the $2.4 billion gain that LGI realized on the TGH Transaction would also be disregarded.

Thus, should the Court determine that the ESD is applicable here, then LGI is nevertheless entitled to its requested refund. Under the DOJ's own arguments, the offending transaction that needs to be ignored is Step 4—i.e., the TGH Transaction. And if the TGH Transaction is ignored, then LGI would be entitled to the refund that it seeks.

## IV.    THE DOJ ALSO MISAPPLIES THE STEP TRANSACTION DOCTRINE

The DOJ also contorts and misapplies the step transaction doctrine. Under a proper application of that doctrine, Steps 1-3 must be respected. The step transaction doctrine is a judicial doctrine that permits the Government to disregard transitory, intermediate steps in a multi-step transaction. *See* LGI MSJ at 18-19. Here, there are no such transitory steps and therefore the step transaction doctrine has no application.

To illustrate this point, compare Project Soy to the transaction in *Associated Wholesale Grocers, Inc. v. United States*, 927 F.2d 1517, 1521 (10th Cir. 1991). In *Associated Wholesale Grocers*, a company called "Super Market Developers" acquired a holding company called "Weston." Super Market Developers later decided it wanted to sell one of Weston's grocery

stores called "Weston Market" to "Elder Food Mart." The parties structured their transaction in the form of two agreements between Super Market Developers and Elder Food Mart. First, under an "Agreement and Plan of Merger," Weston was merged into Elder Food Mart with Elder Food Mart remaining as the surviving corporation. Then, under an "Agreement and Plan of Reorganization," which took effect immediately following the merger, Super Market Developers bought back all the assets acquired by Elder Food Mart except for the stock of Weston Market. The parties treated this transaction as a sale of all of Weston's assets and Associated Wholesale Grocers (Super Market Developers' parent company) took a tax loss on those assets.

The 10th Circuit applied the step transaction doctrine to collapse the two transactions together, concluding the transaction was, in substance, just a sale of Weston Market—not all of Weston's assets. This makes sense: Super Market Developers owned all the assets of Weston at the start of the transaction, and Super Market Developers still owned all the assets of Weston (except for the Western Market) at the end. The intermediate transfer of the Weston assets to Elder Food Mart and then back to Super Market Developers had no lasting effect; that purported transfer was immediately undone. Accordingly, the step transaction doctrine could be applied to ignore the purported tax consequences of the transitory transfer of Weston assets.

The DOJ misconstrues the application of the step transaction doctrine in *Associate Wholesale Grocers* in its application to Project Soy. The DOJ argues that, because the steps of Project Soy were designed and executed as a unitary plan, the step transaction could disregard the first three steps. *See* DOJ MSJ at 18. However, interdependence alone is insufficient for the step transaction doctrine to apply. Importantly, the step transaction doctrine is a variation on the substance-over form doctrine, the purpose of which is to ensure that transactions are taxed

according to their substance. *See Associated Wholesale Grocers*, 927 F.2d at 1521 ("The [step

transaction] doctrine is part of the broader tax concept that substance should prevail over form."

(citation omitted)). The step transaction doctrine applies only if "the transaction differs from its

form." *Turner Broad. Sys., Inc. v. Comm'r*, 111 T.C. 315, 326 (1998). Here, Project Soy's

substance matches its form: none of the steps were undone, thus each must be respected to

account for the real changes it effected—e.g., transforming Telenet Group from a BVBA to an

NV/SA and changing Telenet Group's capital structure to include the NQPS and debt.

Accordingly, the step transaction doctrine is inapplicable.

## V.    CONCLUSION

For the foregoing reasons, the Court should grant the LGI MSJ and deny the DOJ MSJ.

Respectfully submitted this 31st day of August, 2023.

|  |  |
|---|---|
|  | /s/ Rajiv Madan |
| Gregory S. Tamkin | **Rajiv Madan** |
| Dorsey & Whitney LLP | Skadden, Arps, Slate, Meagher & Flom LLP |
| 1400 Wewatta Street, Suite 400 | 1440 New York Avenue, N.W. |
| Denver, CO 80202-5549 | Washington, DC 20005 |
| Telephone: (303) 629-3400 | Telephone: (202) 371-7020 |
| Fax: (303) 629-3450 | Fax: (202) 661-9020 |
| E-mail: tamkin.greg@dorsey.com | E-mail: raj.madan@skadden.com |
|  | *Attorneys for Plaintiff Liberty Global, Inc.* |

### CERTIFICATE OF SERVICE

I certify that I served this document through the ECF system on August 31, 2023.

/s/ Rajiv Madan
**Rajiv Madan**